Here we hear we hear we the United States Court of Appeals for the 11th circuit is open according to law. God save the United States in this honorable court. Good morning. We have four appeals that are scheduled for argument this morning on the court's oral argument calendar. That Rosenbaum, Judge Carnes and I are ready to proceed with the arguments. Miss Geddes is the courtroom deputy and she will serve as the timekeeper and she will let you know when your time to argue has expired. But you will also provide you with a two minute warning before your time expires. And so I see that counsel are ready to proceed. The first case is the United States of America versus Dean Matthews and Richard Michael Suma is here for the appellant Matthews. And Jordy, learn, see that you're working pretty hard this week, Miss learn, you're back again for argument for the United States. And Mr. Suma, are you ready to proceed with your argument? And you're on mute, Mr. Suma. You can't. There you go. May it please the court. I'm Richard Suma. I represent Dean Matthews, the appellant. In the first issue this morning, we argued that the district court erred in enhancing his enhancing his offense level over objection by making a specific finding that a high capacity magazine was in close proximity to his firearm to a firearm at the time of the offense. Close proximity is a multi-factor test, which evaluates the physical distance between the and also the accessibility of the magazine and the firearm. And I think on this issue, the argument is pretty straightforward. Because we we say there's no record evidence at all of the physical distance between a magazine and a firearm. You will the court will note the district court did not make any sort of finding of distance like the magazine was 10 feet or 25 feet or 50 feet away from the firearm. And the court could not make any such finding because there was absolutely no evidence to that effect. Why would a gun store sell rifles that are capable of using a magazine of 30 rounds without also having magazines of 30 rounds? Well, they may but there is no evidence to that fact. Or at least there was no evidence as to the location of the firearm of the magazine. What we have is a statement by a government's witness and I think acknowledgement by all parties that the store does not want to have the magazines readily accessible or installed in the firearms when customers are in the store. Probably due to safety reasons. I think that's a reasonable inference. But but that works against the government because that also suggests that the fact that magazines may have been stored in a different location, they may have been locked up for safety purposes. There. Yes. Yes. Good question related to that. I'm wondering, it seems to me on this standard 30 bullet magazine was going to come with it. Am I understanding the record correctly? There is evidence that in a normal sale, the high capacity magazine comes standard with the gun. But what we're lacking here is no evidence that the standard procedure was to be followed here in this particular purpose. Is there any evidence that suggests in any way that the standard procedure that's always followed was not going to be followed? I don't think so. But I don't think that helps the government's position because there has to be some evidentiary proof that the standard procedure would be followed. What we have here is a question about that. Doesn't the fact that it is the standard procedure provide proof that it would be followed unless there were some kind of an exception that might be available? No, I know. I think I think the government had the burden of providing evidence that this particular sale would have involved a high capacity magazine and that was not done. Council, what difference would it make to your case? I don't understand why you're ceding some premises. What difference would it make to your case if when the sale went through, the magazine was joined to be joined with the rifle? I mean, even if there was a stipulation that if the sale had gone through, they would have told us it's a side door, we'll put the clip in the rifle for you, show you how it works and off you go. The crime was committed here. We made the false statements on the form. There's no standard procedure that at the time you fill out the form, the magazine and the rifle are together. Your argument ought to be the crime was committed before the standard procedure would have gone into effect. Well, that's true. I believe I did argue that in the briefs and I'll get to that now because as the judge, the district court agreed with the defense counsel that the close proximity has to be judged at the time of the offense. And I think that's correct. That's specifically stated in the commentary to the guideline. And at that point, there was no distance between the magazine and the firearm. And anticipating the government's argument that had the sale been somehow completed, that would be relevant conduct. I believe that to be incorrect because relevant conduct is a factual finding, which has to be made by the district court. And that finding was not made because the district court recognized that the standard has to be at the time of the offense. And also, if you look at the definition of harm in the guidelines, harm includes bodily injury, monetary loss, property damage, and any resulting harm. Resulting harm means actual harm that occurred, which did not happen in this case because the sale was never completed. So, we never did get to close proximity. So, that's basically our argument on the first issue. If there are no other questions, I'll move. Oh, one more thing I would like to add. There was a lot of discussion at the sentencing hearing and the briefs about a form, 44473. And I think the government wants to argue that there's some information in that form that the defendant acknowledged he wanted a high-capacity magazine, but that form was never introduced into evidence. So, that argument doesn't help the government. Turning to issue two, if there are no other questions. Issue two is a very interesting issue, I think. We argue that the district court erred in enhancing the offense level by finding a prior conviction for a crime of violence, and the crime is Florida Felony Battery. And of course, this is the same battery that was at the same crime that was at issue in the Vail-Belnon-En-Banc decision where the court held that Florida Felony Battery necessarily requires use of force capable of causing physical pain or injury. But in that case, in the discussion of least culpable conduct, the En-Banc court said that Mr. Vail-Belnon failed to show a realistic probability that a statute would be applied to conduct outside the qualifying definition of a predicate crime, and the qualifying definition here is the elements clause. This case is in direct contrast to Vail-Belnon because here, Mr. Matthews can show and did show that as to him, this felony battery statute was applied to conduct not amounting to use of force capable of causing physical pain or injury. And Mr. Matthews was allowed and permitted to do that, to make that proof under both Vail-Belnon and the Supreme Court's Duenas-Alvarez case. Those cases say that when the focus is on the least culpable conduct, the defendant can go outside the statute and refer to possibly other decisions of the state court which show the statute was applied more broadly. And most specifically, he may show that the statute was so applied in his own case, applied more broadly in his own case, those statutes give the authority to the defendant to introduce evidence of the particular conduct in his own case that resulted in a felony battery conviction. I thought Vail-Belnon held, specifically held, that the categorically a crime of violence and that you couldn't be convicted of it unless the force element was present. That is the correct assessment of the holding, but the holding is also in the context of the fact that the court considered the doctrine of the least culpable conduct and found... I understand that, but it said you can't be the least culpable conduct that you have to be shown to have committed for this crime categorically as present, or you would not have been convicted of this crime. That's true, but they also, the court also said that this defendant also failed to show in his own case... Counsel, two-minute warning. Thank you. Also failed to show in his own case that the statute could be applied to conduct which is broader than the elements clause. Yeah, but that wasn't part of the whole. That was an observation, not part of the whole. Yes, but the holding of any case is limited to the facts presented in this case, and what we're presenting to you here is a case with different facts, which was... So whenever we say we hold the following in this circumstance and this crime, you say that if some future defendant can come up and say, my crime was different. Yes. I know the court sitting en banc specifically held that I could not have been convicted of this crime unless I was found guilty by a jury of the four cell or pled to it, but that's wrong. I was. That's your position. Yes, we can show an exception. So every case that follows a holding of this court can it collaterally attack the holding of the court and say that was wrong. Well, we're not actually challenging Val Vellan. Of course you are, because Val Vellan said you can't be convicted of this without somebody having found beyond reasonable doubt or through a plea that you were guilty of the force element. And you're saying, yes, you can. And my client's case shows that. Yes, your honor. Okay. I'll come back. I may be out of time, but if I'm granted time, I'll come back on rebuttal. Thank you. All right, Ms. Lauren. Good morning. May it please the court. This is assistant United States attorney Jordan learn on behalf of the United States. Unless the court prefers, otherwise I'm going to start with the firearm issue. I think the problem with Mr. Matthews argument is he focuses too much on the relationship between the defendant and the items and the items in this case being the firearm in the magazine and not what the primary focus should be, which is on the relationship between the firearm and the magazine itself. I think that's pretty much the Gordillo case holds. It's about whether or not there's a close, a closer, clear connection between those two items. There has to be also a connection to the firearm in relation to the defendant. If for example, there was a stipulation later for whatever reason that it Mike's gun store across town, the magazines were loaded into the rifle and this defendant went to a gun store where that wasn't the case, that wouldn't prove the element. So it has to be that he's going to get a rifle or he's going to be given a rifle or he's trying to get a rifle in which there's close proximity with the magazine. Right? No, no, I agree fully with your honor, but I think that's what the evidence in this case shows. He felt he filled out the form with the intent to obtain a particular rifle that came standard with a high capacity magazine. That's what our evidence shows. But also, also it is standard that it would not come while he was in the gun store with a high capacity magazine. And there's no evidence as to where the high capacity magazines were kept. Far as we know, he might be told to go somewhere else and get one or come back in 20 days and we'll give you one. We don't know. Do we? I mean, how do we know that? Well, I think you can infer from Agent Evans' testimony, she did say that they review everything that comes with the standard package, including the magazine. But we know it doesn't come with the firearm at the time the crime is committed. Well, I think what your honor is getting at is the accessibility. Am I correct about the relationship between the firearm? What I'm getting at is the close proximity of the high capacity magazine to the rifle at the time the crime is committed. And the time was committed, I'm sure you agree, was when he filled out or signed the purchase in line. I agree with that, your honor, but I think it has to be considered in the context of what this offense was, which was filling out the form with the intent to obtain a particular firearm that comes standard with the high capacity magazine. And so I think the offense is more broadly construed than just the exact moment when you fill out the paperwork. The fact of the matter is he's not going to get the firearm or the magazine until the paperwork is processed. It doesn't mean his offense did not involve a firearm with a high capacity magazine. The nature of this very offense was that. It's just, this is unlike, you know, we don't have a possession case. So this guideline covers a wide range of firearm offenses. And so I think it needs to be considered in the context of what this offense was, which is the false statement on the form. And in that case, or in this case, you know, close proximity. And I think Gordillo is instructive. It's just Gordillo is a possession case. So we need to consider it in the context of this case and how those principles would translate to this sort of crime. Or I think the fact would be that no 922A6 offense would ever qualify for the enhanced base offense level. And I don't think that's what the plain language is a guideline. Well, it would if a gun store sold the rifle with the high capacity magazine attached. Your argument seems to be Mike's gun store would never allow us to get this enhancement because they take precautions that keeps the magazine away from the rifle at the time the defendants or prospective defendants are committing the crime. We don't say to make this enhancement applicable. This is what we need to hope. We look at the standard, which is in the application note and say, is it met? And if it's not met, the fact that the government can't make it applicable in a broad range of factual situations is not really a relevant consideration. Well, what I would say to your honor is I think that the evidence shows that the firearm is sold with the magazine. He wasn't charged with purchasing the firearm, was he? No, that's correct, your honor. Okay, then the question is, does it come with a high capacity magazine? Is it going to be in close proximity at the time he commits the crime? Isn't it? Isn't that what the application note clearly means? No, no, I agree with your honor. But I think our position is that the crime should be construed more broadly than just signing your name and submitting the form. So if he gets in the courtroom and the defendant says, look, you got to construe this crime broadly. You ought to construe it to mean I was buying this to go commit mass murder. That's how you ought to construe it. Your response would be, oh, no, no, no, the elements are clearly set out in the code. Your elements are clearly set out in the code for the present circumstances, aren't they? No, I agree. But I think the relevant, so offense includes relevant conduct, and relevant conduct is much broader than just the act of signing the form. And as we noted in our brief, it also includes the harm that's the object of the offense. And in this case, the harm that was the object of submitting the false statement was the defendant ultimately obtaining the rifle, but also the firearm that comes standard with it. Did he fill out the form at the gun store? Where was the form filled out? Your honor, I'm not sure that that's clear in the record. I believe it was at the gun store, but I'm not entirely sure to be honest with you. But at the end of the day, I do think the focus on what the harm was that was subject of this offense, filling out the form, remains that it was for a specific firearm that comes standard with a high capacity magazine. So the purpose for filling out the form was to obtain a rifle that is capable of accepting a large capacity magazine. Is that correct? Yes, I would agree with that. That's the crime, but that's not the enhancement. The enhancement, you can be, every one of these rifles that are sold are capable of that. But the enhancement doesn't apply every time someone buys one of these rifles. You go to a gun show and buy one of these rifles and the guy says, I'm sorry, I don't have any magazines. They're a hot commodity item, but I can sell you the rifle. You don't get the enhancement, do you? Does the enhancement apply, counsel, when you purchase the gun that is capable of is in close proximity to the rifle? I would say no, your honor, absent some evidence that the defendant intends to obtain both those items together. Under Gordillo, the question is, is there a close connection? And so in theory, you could go to a gun store and buy a firearm that's capable of possessing or doesn't mean that you intend to, I guess I would say there's no accessibility there. There's no intent to have those items and use them together. I understand that. Of course, why would you buy a semi-automatic rifle that's capable of firing off 30 rounds if you don't want to have a magazine? Why would you buy a rifle that's the issue here is whether or not when he purchased the rifle, should the enhancement apply because he purchased a rifle that is capable of having a magazine that fires off 30 rounds and the magazine is in close proximity to the rifle. That's not the issue here. No, I agree with your honor. That's exactly the issue. Okay. At the time of the offense. Right. At the time that he signed the form, right? No, that's correct. And that's exactly the way the government used the evidence. Well, that's why he was in the gun store. That's why he signed the form to purchase the rifle, right counsel? No, that's correct. It's to purchase the rifle. And we know from the government's evidence, the rifle comes standard with that magazine. Well, just to be quick, Judge Wilson had asked you previously, have you filled out the form in the gun store? And if I said you were not sure, but my understanding of the record is that he did fill out the form in the gun store. I don't know. Are you saying that that's not correct or? That's just to be clear. That's consistent with my recollection of the record. Yes, your honor. What talk to us about the firearms checklist that Evans testified about? Sure. So she testified that that checklist, I believe was a routine part of the process and that it contained everything that would be the defendant would be receiving with the firearm. I believe there's also testimony that there's confirmation that the firearm was functioning properly. I think she said that when this process goes on, the defendants usually handle the weapon with the store employees to make sure that it's working properly. I don't think there was any specific testimony that that process included the magazine necessarily, although I do think you can make a reasonable inference that if you're checking to make sure that the rifle is functional, that you're probably going to also be accessing at the same time the magazine that comes standard with it. Although I don't think the district court made that finding. So you're saying the checklist did not include the high capacity magazine? No, no, your honor. I think the checklist did include the high capacity magazine. Why do you think that? Because agent Evans testified that the checklist includes everything that comes with the rifle or that process. You know, you can always circle a reason back around to the conclusion you want, but we don't know if that gun store had those magazines in its inventory at that time or whether it only gave those on certain circumstances. And as far as I can tell, we don't know for sure what the checklist included because the government didn't put it into evidence. And why is that? Why didn't the government put it into evidence? Is that your question? Yes. What could be more relevant than that? I don't disagree that the firearms checklist would absolutely be helpful. I can't say I present to the court why that wasn't put into evidence. I do think the district court can make a reasonable inference that a firearm that is still standard with the magazine that is sold in store is also kept in store. Thank you, Ms. Geddes. It's also stored with it, kept in inventory in the same store. I don't think there's any indication in the record that this would be an exceptional circumstance, that it wouldn't be kept in inventory in the store. So I do think you can make that reasonable inference here. And then as I recall, Agent Evans testimony, the checklist process would have included reviewing with the defendant everything that would have come with the rifle, which would have included the standard magazine. And I want to clarify my earlier statement. I want to be clear that I'm not sure that the process, the evidence indicates the process would have included physically manipulating those items. But I do think Agent Evans testimony indicates that what would be coming with the rifle, what he would receive if his form was approved, and when he arrives to pick up the items ultimately, that process does include reviewing what he will be receiving, which includes the standard magazine. We don't know whether that checklist said a 30-shot flip or 30-shot magazine, or it just simply said magazine do. We don't know. I don't disagree. The reason we don't know is the government didn't put the document into evidence. That's correct, Your Honor. I don't understand why we have to speculate when the government had the means of proof and chose or neglected to use them. Well, I would just refer back. I guess the government's view at sentencing was that Agent Evans testimony was sufficient. I think she was pretty clear. My view for what it's worth, and I speak only for myself, is that it wasn't sufficient, particularly when it would not have taken more than 60 seconds. I understand. For us to know one way or the other. I see my time has expired. Thank you, Your Honor. Your argument, as I understand it, is that the government is relying upon Ms. Evans' testimony that the firearms generally do not have the magazines in them when people are looking at them at the store. Is that understanding correct or incorrect? No, I think that's correct, and that's exactly what she testified to. But I think the inference that can be drawn from that testimony is that the magazines are kept in the store. And I think that inference could also be drawn just from her testimony that it comes standard with a rifle that is stored in the store. All right. Thank you. Thank you. Mr. Sema, you've reserved some time for rebuttal. You're on mute, Mr. Sema. Mr. Sema, you're still on mute. There you are. I got it. Thank you, Your Honor. I just want to clarify our position here on issue two. We think that under the Duane S. Alvarez case of the United States Supreme Court, every defendant has an opportunity to show that a statute was applied in his own case to conduct that is more broad than the qualifying definition of the predicate crime. And he can put in a hearing evidence, a witness, say this is what he did in that crime. And the government can call responsive witnesses, say no, he actually hit the lady over the head with a pipe. I don't know. I don't know the breadth of the testimony that he can do. I think he certainly can rely on the documents that he supplied in this case. And I thank you very much. Counsel, let me ask a question related to that. Argument is basically that an assumption that the bail bail on court made, that is that it's not possible to commit this offense without. Committing without force, right? Is invalid, right? That's your argument that assumption. That's really what I did argue that in and are what I call my third issue. If you if you if you follow the theory that you only need one exception to disprove a rule, then yes, but in the alternative. Well, let me let me tell you what the problem is. First of all, I agree with you, but I was outvoted on. So we now have a holding that is based on that assumption. That it's not possible to commit that offense without engaging in physical violence. And it's on bond and we're bound them. So especially because we've said it's categorically a crime of violence. It seems to me like your only remedy would be for us to reconsider it on bond. Why is that not the case? That's not the case because part of the on bond court reasoning and bail bail bail bail non is that when he considered the least culpable conduct, it decided that that particular defendant could not show the realistic probability that the statute was applied more broadly in any case. So so your position is that the court went all the trouble, effort and time to reach a decision on bonk that is applicable to only one case. I think it's a decision that's generally applicable, but there may be exceptions because the Supreme Court gives every defendant under Duenas-Alvarez the opportunity to show that this that the statute was applied in exceptional manner in his particular case. And that is what we proved in this case. Thank you. All right. Thank you, Mr. Suma. Let's learn.